# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

| | |
|---|---|
| SOUTHERN TRANSPORTATION, INC., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )     No. 16-02669 |
| | ) |
| LYFT, INC.; UBER TECHNOLOGIES, | ) |
| INC.; and RASIER, LLC, | ) |
| | ) |
|     Defendants. | ) |
| | ) |
| | ) |

## ORDER

Before the Court is Defendant Lyft, Inc.'s October 17, 2016 Motion to Dismiss ("Lyft's Motion"). (ECF No. 33 at 91.[1]) Plaintiff Southern Transportation, Inc., responded on November 14, 2016. (ECF No. 46 at 158.) Lyft replied on December 8, 2016. (ECF No. 58 at 200.)

Also before the Court is Defendant Uber Technologies, Inc., and Rasier, LLC's (collectively, the "Uber Defendants") October 20, 2016 Motion to Dismiss ("Uber's Motion"). (ECF No. 35 at 113.) Plaintiff responded on November 14, 2016. (ECF No. 46 at 158.) The Uber Defendants replied on December 8, 2016. (ECF No. 59 at 213.) Plaintiff filed a supplemental response on

---

[1] Unless otherwise noted, all pin cites for record citations are to the "PageID" page number.

February 7, 2017. (ECF No. 63 at 244.) The Uber Defendants filed a supplemental reply on February 21, 2017. (ECF No. 64 at 246.)

For the following reasons, Lyft's Motion and Uber's Motion are GRANTED.

## I. Background

On August 16, 2016, Plaintiff filed this action against Defendants, alleging intentional interference with business relationships, acting in concert, and "class action." (ECF No. 1 ¶¶ 24-48 at 6-11.) Plaintiff's Complaint alleges the following facts.

Plaintiff operates Yellow Cabs, a taxicab service, and other passenger-transportation services in Memphis, Tennessee, and the surrounding area. Plaintiff provides passenger transportation to and from Memphis International Airport and various hotels, restaurants, and other businesses. (Id. ¶¶ 8-9 at 3.) In April 2014, Defendants began providing passenger-transportation services in Memphis and the surrounding area. Defendants also provide passenger transportation to and from the same kinds of businesses as Plaintiff. (Id. ¶¶ 10, 16 at 3-4.)

Defendants are "transportation network companies." (Id. ¶ 11 at 3.) They operate digital networks that connect passengers with drivers who provide prearranged rides. (Id. ¶ 12 at 3.) Through this system, passengers request rides using

2

Defendants' digital networks, and the digital networks in turn connect passengers with drivers who provide the rides using their personal vehicles. Of the fee a passenger pays for a ride, a portion goes to the driver and a portion to Defendants. (Id. ¶¶ 13-15 at 3-4.)

Plaintiff alleges that Defendants, acting in concert with their drivers, "have and continue to intentionally interfere with the business relationships of" Plaintiff. (Id. ¶ 30 at 7; see also id. ¶¶ 24-29 at 6-7.) Plaintiff alleges that it has prospective business relationships with "all persons in Memphis and the surrounding area desiring passenger transportation services." (Id. ¶ 31 at 8.) Plaintiff alleges that both it and Defendants provide the same service in the same market. Plaintiff alleges that, because Defendants are aware of their own prospective business relationships and are aware that other companies provide passenger-transportation services in Memphis and the surrounding area, Defendants have knowledge of Plaintiff's prospective business relationships. (Id. ¶ 32 at 8.)

Plaintiff alleges that "Defendants have and continue to intend to cause breach of plaintiff's prospective relations." (Id. ¶ 33 at 8.) Plaintiff contends that it and Defendants "provide the same service to the same market, and business gained by one party generally means business lost by the other

3

party." (Id.) Plaintiff alleges that "Defendants desire to interfere with plaintiff's business relations and take business from plaintiff, or they know that the interference is substantially certain to occur as a result of their actions." (Id.) Plaintiff alleges that "Defendants know and intend that their actions will result in a loss of business and income to the plaintiff." (Id.)

Plaintiff alleges that Defendants "have and continue to use improper means to interfere with plaintiff's business relations." (Id. ¶ 34 at 9.) Plaintiff alleges that, while it has operated in full compliance with various Tennessee statutes and Memphis city ordinances regulating passenger-transportation services, Defendants have "failed and refused to comply" with those authorities, "operat[ing] illegally in defiance of these statutes and ordinances." (Id. ¶¶ 22-23, 34 at 5-6, 9.) Plaintiff contends that it has lost income and profits as a result of Defendants' interference with its business relations. (Id. ¶ 35 at 9.)

Plaintiff seeks to bring this action on behalf of itself and a class of other similarly situated parties. (Id. ¶¶ 40-48 at 10-12.) Plaintiff seeks compensatory and punitive damages, disgorgement of profits, costs, and attorney's fees. (Id. at 12.)

## II.  Jurisdiction and Choice of Law

Under 28 U.S.C. § 1332(a), this Court has original jurisdiction over all civil actions between citizens of different states "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a)(1).  Plaintiff is a Tennessee corporation with its principal place of business in Tennessee.  (ECF No. 1 ¶ 1 at 1.)  Rasier's sole member is Uber.  (ECF No. 66 at 268.)  Both Lyft and Uber are Delaware corporations with their principal places of business in California.  (ECF No. 1 ¶¶ 2-3 at 1-2.) Plaintiff seeks damages in excess of $75,000.  (<u>Id.</u> ¶ 7 at 2.) The parties are completely diverse, and the amount-in-controversy requirement is satisfied.

In a diversity action, state substantive law governs.  <u>See</u> <u>Brocklehurst v. PPG Indus., Inc.</u>, 123 F.3d 890, 894 (6th Cir. 1997) (citing <u>Erie R.R. v. Tompkins</u>, 304 U.S. 64, 78 (1938)). Where, as here, there is no dispute that a certain state's substantive law applies, the court will not conduct a "choice of law" analysis *sua sponte*.  <u>See</u> <u>GBJ Corp. v. E. Ohio Paving Co.</u>, 139 F.3d 1080, 1085 (6th Cir. 1998).  Tennessee substantive law applies.

## III. Standard of Review

In addressing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the court

must construe the complaint in the light most favorable to the plaintiff and accept all well-pled factual allegations as true. League of United Latin Am. Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007). A plaintiff can support a claim "by showing any set of facts consistent with the allegations in the complaint." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 (2007).

This standard requires more than bare assertions of legal conclusions. Tackett v. M&G Polymers, USA, LLC, 561 F.3d 478, 488 (6th Cir. 2009). "[A] formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. To survive a motion to dismiss, a complaint must contain sufficient facts "to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citation omitted). A plaintiff with no facts and "armed with nothing more than conclusions" cannot "unlock the doors of discovery." Id. at 678-79. To survive a motion to dismiss, a complaint must "contain either direct or inferential allegations respecting all

material elements necessary for recovery under a viable legal theory." D'Ambrosio v. Marino, 747 F.3d 378, 383 (6th Cir. 2014) (quotation marks omitted).

## IV. Analysis

### A. Intentional Interference with Business Relationships

Defendants contend that Plaintiff has not adequately pled each element of its claim for intentional interference with business relationships (the "intentional-interference claim"). (ECF No. 33-1 at 95-96, ECF No. 35-1 at 120-21.) Plaintiff disagrees. (ECF No. 46 at 166-67.)

To sustain a claim for intentional interference with business relationships under Tennessee law, a plaintiff must prove the following elements:

> (1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach or termination of the business relationship; (4) the defendant's improper motive or improper means; and finally, (5) damages resulting from the tortious interference.

Trau-Med of Am., Inc. v. Allstate Ins. Co., 71 S.W.3d 691, 701 (Tenn. 2002) (emphasis removed and citation omitted).

Plaintiff contends it has adequately alleged that it has a prospective relationship with an identifiable class of third persons, satisfying the first element. Plaintiff alleges that

7

it provides passenger-transportation services in Memphis and the surrounding area to and from the airport and various hotels, restaurants, and other businesses. Plaintiff alleges that it has prospective business relationships with "all persons in Memphis and the surrounding area desiring passenger transportation services." (ECF No. 1 ¶ 31 at 8.) Plaintiff "acknowledges that this is a broad class of persons," but argues that "other courts have found . . . similar allegations to be sufficient." (ECF No. 46 at 167.)

Plaintiff contends that it has adequately alleged that Defendants have knowledge of Plaintiff's prospective relationships, satisfying the second element. Plaintiff alleges that it and Defendants provide the same service in the same market and that Defendants are aware of their own prospective business relationships and of other companies' provision of passenger-transportation services in that market. Plaintiff argues that, based on those facts, it is a "reasonable inference" that Defendants have the requisite knowledge. (Id. at 169.)

Assuming without deciding that Plaintiff's allegations in support of the first two elements are adequate, Plaintiff has failed to state an intentional-interference claim on which relief can be granted because, as discussed below, its allegations in support of the remaining elements are inadequate.

## 1. Defendants' Improper Motive or Improper Means

"A showing of impropriety is essential in a case for intentional interference with business relationships." Patterson v. Methodist Healthcare-Memphis Hosps., No. W2008-02614-COA-R3-CV, 2010 WL 363314, at *10 (Tenn. Ct. App. Feb. 2, 2010). "[E]ither improper motive or improper means may support liability for tortious interference." Watson's Carpet & Floor Coverings, Inc. v. McCormick, 247 S.W.3d 169, 184 (Tenn. Ct. App. 2007). To prove improper motive, a plaintiff must demonstrate that "defendant's predominant purpose was to injure the plaintiff." Trau-Med, 71 S.W.3d at 701 n.5. Improper means include:

> those means that are illegal or independently tortious, such as violations of statutes, regulations, or recognized common-law rules; violence, threats or intimidation, bribery, unfounded litigation, fraud, misrepresentation or deceit, defamation, duress, undue influence, misuse of inside or confidential information, or breach of a fiduciary relationship; and those methods that violate an established standard of a trade or profession, or otherwise involve unethical conduct, such as sharp dealing, overreaching, or unfair competition.

Id. (citations omitted). In some instances, engaging in commercial activity without a required permit may satisfy the improper-means element. See Tennison Bros. v. Thomas, No. W2013-01835-COA-R3-CV, 2014 WL 3845122, at *13 (Tenn. Ct. App. Aug. 6, 2014). "[A] determination of whether a defendant acted 'improperly' or possessed an 'improper' motive is dependent on

the particular facts and circumstances of a given case." Trau-Med, 71 S.W.3d at 701 n.5.

Plaintiff contends that Defendants have used improper means. (ECF No. 46 at 171-73.) Plaintiff argues that it "has cited the statutes and ordinances in the complaint that it alleges defendant[s] and/or [their] drivers have violated." (Id. at 172-73.) The Complaint alleges that "defendants and/or their drivers have failed and refused to comply with" sections 6-54-128, 7-51-1003, 7-51-1007, 55-4-112, 65-15-101, and 65-15-110 of the Tennessee Code and sections 6-44-3, 6-44-4, 6-44-5, 6-44-6, 6-44-20, 6-44-21, and 6-44-22 of the City of Memphis Code of Ordinances. (ECF No. 1 ¶¶ 17-18, 21, 23, 34 at 4-6, 9.) The only specific violating conduct alleged by the Complaint is that "[n]o certificates of public convenience or permits have been issued to defendants or their drivers by the City of Memphis." (Id. ¶ 25 at 6; see ECF No. 46 at 173.)

Defendants argue that Plaintiff has failed to allege causation. (ECF No. 33-1 at 107-08[2]; see ECF No. 35-1 at 126.) Lyft argues: "Plaintiff alleges no . . . causal link -- it does not allege, for example, that the alleged ordinance violations

---

[2] Lyft addresses causation under the damages element. (ECF No. 33-1 at 107.) Some Tennessee courts have addressed causation under the damages element. See, e.g., Springfield Invs., LLC v. Global Invs., LLC, No. E2014-01703-COA-R3-CV, 2015 WL 5064090, at *17, *20 (Tenn. Ct. App. Aug. 27, 2015). As discussed below, other Tennessee courts address causation under the improper-motive-or-improper-means element.

cause customers to choose Lyft over Plaintiff's company." (ECF No. 33-1 at 107-08.) Lyft argues that "Plaintiff alleges only that Lyft competes with it, and that Lyft allegedly violates local law while doing so." (Id. at 108.) Lyft contends that "[a]ny harm Plaintiff suffers results only from lawful competition, not from the alleged improper conduct."[3] (Id.)

Under Tennessee law, a defendant's improperly motivated conduct or improper means -- rather than the defendant's lawful competitive conduct -- must cause the harm that plaintiff suffers. In Trau-Med, the Tennessee Supreme Court explained that it had previously declined to recognize the tort of intentional interference with business relationships because, "as the tort was originally formulated, [that] claim . . . could be actionable merely upon proof that a defendant's intentional acts resulted in a plaintiff's economic injury." 71 S.W.3d at 699. Trau-Med reasoned that, "without any consideration of the propriety of the defendant's objective or motive," the intentional-interference tort "could potentially infringe upon the principle of free competition by holding liable those

---

[3] The parties dispute whether the statutes and ordinances cited in the Complaint apply to transportation network companies, whether the Transportation Network Company Services Act (the "Act"), Tenn. Code Ann. §§ 65-15-301 et seq., has preempted otherwise applicable statutes and ordinances regulating transportation network companies, and whether Plaintiff has abandoned its claims based on Defendants' conduct since the effective date of the Act. It is not necessary to resolve those issues because, even if Defendants were governed by and in violation of any of those authorities, Plaintiff's failure to plead causation adequately warrants dismissal of its intentional-interference claim.

individuals engaged in legitimate business practices." Id.
Trau-Med noted that, "[t]o address this concern, a majority of
jurisdictions have . . . add[ed] the requirement of proof of
*improper* conduct extending beyond the bounds of doing business
in a freely competitive society." Id. at 700.

In Watson's, the court noted that Trau-Med had "cited with
approval the discussion of intentional interference with
prospective business relationships" in the Restatement (Second)
of Torts. 247 S.W.3d at 175. Trau-Med quoted the Restatement
as follows:

> One who intentionally and *improperly interferes* with
> another's prospective contractual relation (except a
> contract to marry) is subject to liability to the
> other for the pecuniary harm resulting from loss of
> the benefits of the relation, *whether the interference
> consists of*
>
> (a) *inducing* or otherwise *causing* a third person not
>     to enter into or continue the prospective
>     relation or
>
> (b) *preventing* the other from acquiring or continuing
>     the prospective relation.

71 S.W.3d at 700 n.2 (emphasis added; emphasis in Trau-Med
removed) (quoting Restatement (Second) of Torts § 766B (1979)).

The Restatement makes clear that the improper interference
made actionable by the intentional-interference tort, not
defendant's competitive conduct generally, must be what causes
harm to plaintiff's prospective business relationship with a
third party. One federal district court applying Tennessee law

12

has explained that "[c]ompeting with a business for customers is all-American capitalism and is not the same as using improper means to interfere with the relationship between that business and its customers." Tenn. Walking Horse Breeders' & Exhibitors Ass'n v. Nat'l Walking Horse Ass'n, 528 F. Supp. 2d 772, 785 (M.D. Tenn. 2007) ("The Court finds . . . insufficient evidence that Defendant used improper means to interfere with the relationship between the Plaintiff and its membership.").

The decisions Plaintiff cites illustrate that the alleged impropriety by a defendant, not the defendant's lawful competitive conduct, must cause the harm to plaintiff's business relationship. In Tennison Bros., the Tennessee Court of Appeals decided that plaintiffs had adequately pled improper motive or improper means where they alleged that the defendant had unlawfully erected an advertising billboard without a permit. 2014 WL 3845122, at *13. In that case, plaintiff Clear Channel Outdoor ("CCO"), a company, entered into a lease agreement with plaintiff Tennison Brothers, a second company, to erect a billboard on Tennison's property. Id. at *1. Defendant Thomas had entered into a lease agreement with the owner of an adjacent property to erect a billboard on that parcel of land. Id. A Tennessee law regulating the spacing of advertising structures required neighboring structures on the same side of the highway to be spaced at least 1,000 feet apart. Id. at *1-2. Because

CCO's and Thomas's proposed billboard locations were only 50 feet apart, CCO and Thomas could not both receive building permits from the state. Id. After both CCO and Thomas had submitted separate permit applications to the Tennessee Department of Transportation, CCO's application was granted, but Thomas's was rejected. Id. at *2.

Alleging that Thomas had proceeded to construct a billboard illegally on the adjacent property without a permit, CCO and Tennison sued Thomas for intentional interference with business relationships. Id. at *12-13. Reversing the trial court's decision to the contrary, the Court of Appeals concluded that CCO and Tennison had adequately alleged facts in support of the fourth element of their intentional-interference claims:

> [B]oth Tennison and CCO aver that Mr. Thomas illegally constructed a billboard without a permit to prevent the construction of a billboard by CCO on Tennison's property. Under the definitions outlined in Trau-Med and Watson's, the allegation that Mr. Thomas illegally constructed a billboard is sufficient to satisfy the fourth criterion for this tort, i.e., that the interfering party use improper motive or means. Here, the improper means was Mr. Thomas's construction of a billboard without a permit, which prevented CCO from building its billboard on Tennison's property.

Id. at *13. In Tennison Bros., plaintiffs' allegations of defendant's improper means adequately alleged that CCO was prevented from building its billboard as a result of defendant's illegal conduct. See also PPG Indus., Inc. v. Payne, No. 3:10-CV-73, 2012 WL 1836314, at *6 (E.D. Tenn. May 21, 2012)

14

("[Ledford's] reasons for not doing business with Lee Payne and Mil-Spec are not connected with any alleged improper means used by PPG."); Assist-2-Sell, Inc. v. Assist-2-Build, LLC, No. 1:05-CV-193, 2005 WL 3333276, at *6 (E.D. Tenn. Dec. 6, 2005) ("[Defendants'] taking of the signs and disruption of the open house, if true, could have interfered with a prospective business relationship."); cf. Watson's, 247 S.W.3d at 178 (noting that "[t]he *act* that caused [plaintiff] damage was [defendant's] refusal to deal, not any other action by [defendant] such as defamation," and finding that defendant's "refusal to deal [was] not improper").

Although Plaintiff alleges that Defendants and their drivers have failed to obtain certificates of public convenience, or permits, from the City of Memphis, Plaintiff has not alleged that Defendants' failure to do so is what has harmed Plaintiff's prospective business relationships with customers. Unlike the defendant in Tennison Bros., whose illegal construction of a billboard prevented the plaintiff from building its billboard, Plaintiff has not alleged that Defendants' failure to obtain permits has prevented Plaintiff from operating its fleet of vehicles. See Tennison Bros., 2014 WL 3845122, at *13. Plaintiff has not alleged that the reason customers have not done business with Plaintiff is connected with Defendants' failure to obtain permits. See PPG Indus.,

2012 WL 1836314, at *6. Plaintiff has not alleged that Defendants' failure to obtain permits has somehow targeted Plaintiff's prospective relationships with customers. See Assist-2-Sell, 2005 WL 3333276, at *6. Even were the Complaint to make those allegations, they would need to be plausible. See Iqbal, 556 U.S. at 678. For Plaintiff's intentional-interference claim to be adequately pled, Defendants' failure to obtain permits must be the means of interference, not Defendants' competitive conduct generally. See Tenn. Walking Horse, 528 F. Supp. 2d at 785.

In the light most favorable to Plaintiff, its theory of causation is that Defendants' competitive business conduct is tainted because Defendants provide passenger-transportation services without acquiring necessary permits. On this theory, Plaintiff's losses of business and profit attributable to Defendants' competitive business conduct are nevertheless being caused (albeit indirectly) by improper means.

The Uber Defendants contend that this tainting theory, based on alleged violations of transportation regulations, cannot sustain an intentional-interference claim. (ECF No. 35-1 at 127.) They argue that, "[i]f the law were otherwise, the tort of intentional interference with business relationships would become an all-purpose tool for competitors to hijack the government's enforcement of any regulatory scheme, under the

theory that their rivals were using 'improper means' by failing to comply with the law." (Id.) The Uber Defendants contend that the "scope of the tort simply does not stretch that far." (Id.) Plaintiff's intentional-interference claim effectively asks a federal district court to enforce indirectly a city ordinance. No authority cited by Plaintiff supports its tainting theory of causation.

Although the Complaint alleges that Defendants have violated numerous other statutes and ordinances, the Uber Defendants argue that Plaintiff has not alleged any facts in support. (ECF No. 35-1 at 127.) The Uber Defendants contend that "Plaintiff simply cites a list of statutes and makes broad, conclusory allegations about the Uber Defendants' compliance." (Id.) Conclusory allegations that Defendants "failed and refused to comply with the statutes and ordinances" cited in the Complaint (ECF No. 1 ¶ 23, 34 at 6, 9) do not satisfy the federal pleading standard requiring a plaintiff to support a claim "by showing any set of facts consistent with the allegations in the complaint." Twombly, 550 U.S. at 563. The federal pleading standard requires more than bare assertions of legal conclusions. Tackett, 561 F.3d at 488. It is impossible to tell whether any violations by Defendants have harmed Plaintiff because Plaintiff does not allege facts showing what those violations were.

Plaintiff has not adequately pled Defendants' improper motive or improper means.

## 2. Defendants' Intent to Interfere

To sustain a claim for intentional interference with business relationships, plaintiff must also prove "the defendant's intent to cause the breach or termination of the business relationship." Trau-Med, 71 S.W.3d at 701.

The Complaint alleges that "Defendants have and continue to intend to cause breach of plaintiff's prospective relations" in that (a) "Plaintiff and defendants provide the same service to the same market, and business gained by one party generally means business lost by the other party"; (b) "Defendants desire to interfere with plaintiff's business relations and take business from plaintiff, or they know that the interference is substantially certain to occur as a result of their actions"; and (c) "Defendants know and intend that their actions will result in a loss of business and income to the plaintiff." (ECF No. 1 ¶ 33 at 8.)

Defendants contend that Plaintiff has failed to allege that Defendants intended to cause breach or termination of Plaintiff's business relationships. (ECF No. 33-1 at 98-99; ECF No. 35-1 at 123-24.) Lyft argues that the intent "element cannot be satisfied by allegations that the defendant's alleged conduct was merely intentional; rather, the plaintiff must

allege that the defendant actually intended to cause a breach of the relationship at issue." (ECF No. 33-1 at 98.) The Uber Defendants argue that "simply alleging that . . . Defendants intend to *compete* in the same market as Plaintiff is not sufficient to allege that . . . Defendants intended to *interfere* with Plaintiff's business relationships." (ECF No. 35-1 at 123.)

In <u>Overnite Transportation Co. v. Teamsters Local Union No. 480</u>, the Tennessee Court of Appeals considered whether a Tennessee trial court had properly dismissed a plaintiff's claim for intentional interference with business relationships as inadequately pled. No. M2002-02116-COA-R3-CV, 2004 WL 383313, at *11-13 (Tenn. Ct. App. Nov. 8, 2004). Addressing whether Overnite, the plaintiff company, had adequately pled the element of intent in support of its claim, the Court of Appeals noted that Overnite's "complaint stated that 'Defendants' misconduct was intentional and interfered with the employment relationship between Overnite and its employees by adversely impacting the safe work environment that Overnite maintains for its employees.'" <u>Id.</u> at *13. Overnite argued that its allegations were "sufficient to show that the Union intentionally caused a breach of a 'business relationship.'" <u>Id.</u> The Court of Appeals rejected that argument, explaining:

> [T]he allegation that the Union's conduct 'was
> intentional' does not satisfy the requirement of
> alleging that the Union intended to cause a breach in
> the business relationship at issue. Rather, Overnite
> must allege that the Union intentionally caused a
> breach in Overnite's relationships. This the
> complaint fails to do.

Id.; see also Assist-2-Sell, 2005 WL 3333276, at *3 ("The

Overnite court reasoned the complaint failed to state a cause of

action for tortious interference because the complaint only

alleged intentional conduct that incidentally affected a

business relationship instead of alleging the defendant

intentionally caused a breach in Overnite's business

relationships.").

Here, the Complaint's allegations supporting the intent

element are inadequate. The allegation that the parties compete

in the same market and "business gained by one party generally

means business lost by the other party" does not allege that

Defendants intentionally caused a breach or termination of

Plaintiff's prospective business relationships with its

customers. See Trau-Med, 71 S.W.3d at 701; Overnite, 2004 WL

383313, at *13. That is an allegation of ordinary competition

in the market. See Trau-Med, 71 S.W.3d at 699 (explaining that

the Tennessee Supreme Court had declined to recognize a version

of the intentional-interference tort "actionable merely upon

proof that a defendant's intentional acts resulted in a

plaintiff's economic injury"). An allegation of intentional

conduct that incidentally affects a business relationship is not sufficient.  See Assist-2-Sell, 2005 WL 3333276, at *3.  The remaining allegations of the Complaint that "Defendants desire to interfere with plaintiff's business relations and take business from plaintiff," and that "Defendants know and intend that their actions will result in a loss of business and income to the plaintiff" are bare assertions of legal conclusions. Tackett, 561 F.3d at 488.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678 (citation omitted).

Plaintiff argues that, to the extent Overnite holds that "just because a party engages in intentional conduct does not equate to an intent to interfere," the decision "has no application here."  (ECF No. 46 at 170-71.)  Plaintiff contends that Overnite was a case about existing business relationships, but that this case is about prospective business relationships. (Id. at 171.)

Plaintiff offers a distinction without a difference.  Trau-Med held that, to prove an intentional-interference claim, a plaintiff must prove a "defendant's intent to cause the breach or termination of [plaintiff's] business relationship" regardless of whether that relationship is "an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons."  71

S.W.3d at 701.  Overnite quoted Trau-Med's formulation of the elements of an intentional-interference tort without distinguishing between existing relationships and prospective relationships.  See 2004 WL 383313, at *12-13.  In Assist-2-Sell, after quoting the Trau-Med standard and discussing Overnite, the court explained, "Unlike Overnite, [complainants'] specifically allege B & SSC and Mr. Everhart intentionally interfered with their business relations."  2005 WL 3333276, at *3-4.  Assist-2-Sell addressed prospective rather than existing business relationships.  Id. at *5-6.  Plaintiff cites no authority that intentional conduct alone, rather than intent to cause a breach or termination of plaintiff's business relationships, suffices where prospective relationships are at issue.

Plaintiff quotes the Restatement, which states that "[t]he interference with the other's prospective contractual relation is intentional if the actor desires to bring it about or if he knows that the interference is certain or substantially certain to occur as a result of his action."  (ECF No. 46 at 170 (quoting Restatement (Second) of Torts § 766B, cmt. d).)  Plaintiff argues that the Complaint establishes that "defendants know and intend that their actions will result in a loss of business and income to the plaintiff" and Defendants "desire to interfere with plaintiff's business relations and take business

22

from plaintiff, or they know that the interference is substantially certain to occur as a result of their actions." (Id.)

Putting aside the conclusory nature of Plaintiff's allegations, the allegations of intent are inadequate even under the Restatement standard. The same Restatement comment Plaintiff quotes provides that "[t]he interference . . . must also be improper." Restatement (Second) of Torts § 766B, cmt. d. It is not sufficient that Defendants intended, desired, or knew with certainty that their lawful competitive business conduct would cause a loss of business and income to Plaintiff. Rather, Plaintiff must allege that Defendants intended, desired, or knew with certainty that their *improper* conduct -- their failure to obtain permits or some other act of noncompliance -- would harm Plaintiff. Plaintiff make no such plausible allegation.

Plaintiff has not adequately pled Defendants' intent to cause the breach or termination of Plaintiff's business relationships.

### 3. Damages

Although Plaintiff "need not allege specific damages at the pleading stage" to plead the fifth element of its intentional-interference claim adequately, see Assist-2-Sell, 2005 WL 3333276, at *7, to the extent courts have addressed causation

under the damages element, Plaintiff has not adequately pled damages, see, e.g., Springfield Invs., LLC v. Global Invs., LLC, No. E2014-01703-COA-R3-CV, 2015 WL 5064090, at *17, *20 (Tenn. Ct. App. Aug. 27, 2015).

The Complaint fails to contain "direct or inferential allegations respecting all material elements necessary for recovery" on Plaintiff's intentional-interference claim, which warrants dismissal of that claim. See D'Ambrosio, 747 F.3d at 383. Lyft's Motion and Uber's Motion are GRANTED on Plaintiff's intentional-interference claim.

### B.    "Acting in Concert" and "Class Action" Claims

Defendants argue that Plaintiff's claims for acting in concert and "class action" fail because both require an underlying tort. (ECF No. 33-1 at 108-09; ECF No. 35-1 at 128-29 (citing Bryant v. McCord, No. 01A01-9801-CV-00046, 1999 WL 10085, at *13 (Tenn. Ct. App. Jan. 12, 1999) (establishing that an underlying tortious act is a necessary condition of a claim for acting in concert).) Plaintiff does not disagree, but argues that its remaining claims should not be dismissed because it "has alleged a plausible claim for intentional interference with plaintiff's prospective business relations." (ECF No. 46 at 177.)

Because Plaintiff's remaining claims are derivative of its intentional-interference claim and that claim warrants

dismissal, Plaintiff's remaining claims also warrant dismissal. Lyft's Motion and Uber's Motion are GRANTED on Plaintiff's acting-in-concert and "class action" claims.

## V.    Conclusion

For the foregoing reasons, Lyft's Motion and Uber's Motion are GRANTED.    Plaintiff's pending motion for class certification, filed on June 29, 2017, is DENIED as moot.   (ECF No. 72 at 293; ECF No. 73 at 296.)   This action is DISMISSED.


So ordered this 30th day of June, 2017.


/s/ Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE